## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MIGUEL HERNANDEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:18-cv-1946-GCS** |
| | ) | |
| **BC SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

Plaintiff Miguel Hernandez alleges that Defendant BC Services, Inc., a debt collector, violated his rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* By motion dated January 21, 2020, BC Services seeks summary judgment, arguing that Hernandez's claims are time barred, that he lacks standing, and that its collection activities did not violate the FDCPA. (Doc. 55). Hernandez responded in opposition (Doc. 56), and BC Services replied (Doc. 61). The matter is ripe for ruling, and for the reasons delineated below, BC Services's motion for summary judgment is **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

Hernandez, a consumer as defined by the FDCPA, allegedly incurred a series of debts to Mid America Radiology, and the debts were in default and sold to BC Services, a debt collector for purposes of the FDCPA. Hernandez filed suit in October 2018 alleging that BC Services violated the FDCPA and the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA"). In his original complaint, Hernandez claimed that BC Services violated the FDCPA by making a demand for immediate payment in a September 14, 2018 letter. This initial collection communication sought $986.42 for an account related to charges incurred through Mid America Radiology. (Doc. 1).

Hernandez amended his complaint on February 21, 2019. (Doc. 21). Hernandez again alleged that on or about September 14, 2018, BC Services violated the FDCPA by mailing a dunning letter to him in an attempt to collect the $986.42 debt. Hernandez brought a claim for violation of the FDCPA, citing sections § 1692e, e(2)(A), e(5), e(10), f, f(1), and g(b). He also brought a claim under ICFA, but in briefing on a motion to dismiss filed by BC Services, Hernandez acknowledged that his ICFA claim was insufficiently pleaded and should be dismissed.

Hernandez argued that while the letter, on its own, did not violate the FDCPA, he was given contradictory information during a September 24, 2018 phone call with BC Services. In that phone call, a debt collector told him that he actually owed $7,595.04 for six different accounts related to Mid America Radiology. Hernandez alleged that immediate payment was demanded in the letter and in the call, overshadowing his G notice rights.[1] On September 27, 2019, the Court dismissed Hernandez's amended complaint with leave to amend to allow him to add allegations to establish how the

---

[1]      Under § 1692g, within five days of an initial communication with a consumer, a debt collector must provide a written notice, known as a G Notice, that contains relevant information about the alleged debt and how to dispute it.

September 24, 2018 phone call, coupled with the September 14, 2018 letter, was false, deceptive, or misleading under § 1692e or was unfair or unconscionable under § 1692f.

On October 25, 2019, Hernandez filed a second amended complaint bringing a single FDCPA claim, which cited sections § 1692e, e(2)(A), e(5), e(10), f, and f(1) and was supported by additional factual allegations. According to the operative complaint, BC Services sent Hernandez multiple collection letters related to various open accounts for Mid America Radiology throughout 2017 and 2018. The September 14, 2018 letter, involving an account ending in 2636, was the initial communication Hernandez received related to that account, and it contained the requisite G Notice. The letter stated that Hernandez owed $986.42 and $0.00 in interest. (Doc. 40-1).

BC Services called Hernandez on September 18, 2018, after Hernandez received the letter, but Hernandez did not answer the call. On September 20, 2018, BC Services sent Hernandez another letter listing two accounts on which Hernandez allegedly owed $3,489.63. One of the accounts listed was the account ending in 2636 with a balance of $986.42 listed in the letter. (Doc. 40-2). Hernandez alleges that he was confused and concerned by the collection letters and the September 18 phone call, so he called BC Services back on September 24, 2018. The representative told him that he actually owed $7,595.04 for six open accounts. Hernandez claims that he was stunned by the substantial increase to the balance from the first letter to the second and then to the balance he was given during the phone call.

On September 26, 2018, BC Services sent Hernandez another letter seeking $5,779.51 for five accounts owed to Mid America Radiology. Hernandez also described

other dunning letters he received from BC Services that suggested that he was being charged interest despite the letters identifying the interest he owed as $0.00. He pointed to a February 25, 2017 letter for an account ending in 1593. The letter identified a principal balance of $1,143.80 and interest due as $0.00. The September 26, 2018 letter, however, identified account ending in 1593 as having a balance of $1,230.77 even though the letter also stated the interest due was $0.00. Several collection letters, according to Hernandez, identified the interest as $0.00, suggesting that he was not being charged interest, but balances on accounts increased without explanation. The allegations about the interest charges and unexplained balance increases were not part of Hernandez's earlier complaints.

In his second amended complaint, Hernandez also alleges that BC Services violated the FDCPA during the September 24, 2018 phone call when a BC Services representative failed to advise him that interest or other charges were accruing on his debts. He claims that the representative also urged him to pay off the "little guys," without explanation of what that meant, because the accounts were negatively affecting his credit report. Hernandez was confused and concerned by all of the different amounts he was given during the September 2018 communications. Hernandez further alleges that the inclusion of interest or fees to the debts created a false, deceptive, and misleading representation as to the actual amount he owed.  This is because, according to Hernandez, the underlying contract or agreement with Mid America Radiology did not permit the charging of interest and/or fees.

BC Services submitted excerpts from Hernandez's deposition with its motion for summary judgment. The deposition transcript was more than 145 pages, but only 15 pages were supplied to the Court. When asked if BC Services caused Hernandez to have any medical conditions, Hernandez testified, "BC Services haven't caused me nothing. But, you know, when they call me on my cell phone and they ask me – I owe this much money, all this stuff in there, I'm just wondering why they're calling me when, you know, it's just stressing me out more than what I'm stressed out now." (Doc. 55-2, p. 8-9). He denied owing BC Services any money. (Doc. 55-2, p. 10). Hernandez described being upset and stressed out by the September 24, 2018 phone call because he did not understand why someone was trying to collect money that he did not owe. (Doc. 55-2, p. 11-12).

BC Services also submitted an affidavit from its General Counsel stating that the $7,595.04 balance described in the September 24, 2018 phone call was the accurate amount Hernandez owed for six accounts placed for collections with BC Services. The affidavit also verifies that the $5,779.51 sought in the September 26, 2018 letter was the amount Hernandez owed for five of the accounts on that date. (Doc. 55-3). With his response, Hernandez provided discovery responses from BC Services that verify that the letters attached to his complaint are accurate copies of the letters Hernandez received, save for redactions of his personal information. (Doc. 56-1).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute

as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

### ANALYSIS

### I. Statute of Limitations and Relation Back of Hernandez's Second Amended Complaint

BC Services argues that the claims in Hernandez's second amended complaint are barred by the FDCPA's one-year statute of limitations because the claims do not relate back to Hernandez's initial complaint. Amendments of complaints are governed by Federal Rule of Civil Procedure 15. Specifically, Rule 15(c) permits an amended pleading to relate back to the date of the original pleading in any of three circumstances: (1) when

the statute of limitations governing the cause of action permits relation back; (2) when the claim or defense in the amended pleading arose from the same transaction or occurrence as set forth in the original pleading; and (3) when a new party is joined and it is not unfair for the claim against that party to be treated as if it was raised on the date the original pleading was filed.  *See* FED. R. CIV. PROC. 15(c)(1).

Here, the parties focus on whether the claims in the operative complaint arise from the same occurrence as Hernandez's original pleading as required by Rule 15(c)(1)(B).[2] The relevant inquiry centers on the events alleged in the initial complaint, as "relation back is permitted . . . where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading." *Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996). To the extent that different sets of facts are alleged, an amended complaint does not relate back to the initial complaint.

BC Services argues that Hernandez raises three new claims in his operative complaint: (1) that the communications Hernandez received left him to guess as to the amount he owed; (2) that BC Services attempted to collect interest illegally; and (3) that BC Services stated a lump sum due in some communications without breaking down what debts the sum encompassed. As to Hernandez's confusion over the amount he owed, the Court finds that the second amended complaint relates back to the initial complaint. The initial complaint alleged that Hernandez was confused and skeptical

---

[2]       Hernandez's initial complaint alleged the same claims in nearly identical language as the first amended complaint.

because he was given drastically different amounts due in various communications with BC Services. The initial and first amended complaints also alleged that the September 24, 2018 phone call created a false sense of urgency to avoid negative credit reporting and that Hernandez was pushed inappropriately to pay off smaller accounts immediately so as to tackle his debt successfully.

The second amended complaint also alleged facts related to communications from BC Services that sowed confusion for Hernandez during September 2018. While he fleshed out additional facts to add clarity and specificity to his claim, Hernandez alleges in both complaints that he received various written and oral communications in September 2018 with differing information as to the amount of money he owed. For example, some communications suggested he owed under $1,000. Other communications, however, suggested balances in excess of $5,000, which caused Hernandez confusion as to whether the debts were valid and whether he owed the amounts that BC Services claimed were due. This is sufficient to satisfy Rule 15(c)(1)(B), and thus, the claims regarding unclear, confusing collection communications received in September 2018 do relate back to the initial complaint.

As to his claim about interest being added to balances without explanation, the Court agrees with BC Services that this is not derived from the same events described in Hernandez's initial complaint. There were no allegations about balances being inflated without explanation or interest being charged in the initial complaint. The word interest appears once in the initial complaint and once in the first amended complaint. The allegations that balances increased without explanation throughout the course of 2017

and 2018, despite letters showing $0.00 in interest on his various accounts, are completely new facts in the second amended complaint that are unrelated to Hernandez's earlier claims.

Hernandez did not mention any collection letters showing $0.00 of interest due until his second amended complaint. His earlier complaints also made no mention of any allegations that interest or fees were being charged on accounts collected by BC Services without justification and, perhaps, in violation of the contract underlying his debts. It is true that the allegations about potential interest and fees do provide some context for Hernandez's alleged confusion during September 2018.  However, they do not, on their own, support the relation back of a claim that BC Services violated the FDCPA by adding interest or inflating balances in a misleading or unconscionable manner.

For all these reasons, the Court finds that Hernandez's claim for relief related to added interest or fees does not relate back to his initial complaint. As such, that claim is barred by the applicable state of limitations. Hernandez's remaining claims that in September 2018 he was confused by the collection activity on his accounts with BC Services and that he was inappropriately pressured to pay immediately do relate back to his earlier complaints and are not barred by the statute of limitations.

## II.    Article III Standing

BC Services next argues that Hernandez lacks standing to pursue his FDCPA claims. Article III of the Constitution limits federal judicial power to adjudicate only "cases and controversies." *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 641 (7th Cir. 2014)(citations omitted). To satisfy the standing requirements of Article III, a "litigant

must show that (1) it has suffered an actual or imminent concrete and particularized 'injury in fact'; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 641-642 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000)).

As the party invoking federal jurisdiction, Hernandez bears the burden of establishing standing. Because standing is "not [a] mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)(quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)) (alterations in original).

When a party challenges standing, the Court first must resolve "whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015)(citing *Apex Dig. Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). If a standing challenge contends that a plaintiff's complaint lacks sufficient factual allegations to establish standing, the challenge is a facial one, and courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Silha*, 807 F.3d at 173 (internal quotations and citations omitted). A factual challenge, on the other hand, contends that "there is *in fact* no subject matter jurisdiction." *Apex Digital, Inc.*, 572 F.3d at 443 (citing reference omitted)(emphasis in original). In reviewing a factual challenge, the Court looks beyond the pleadings and may

consider any evidence submitted to determine whether subject matter jurisdiction exists. *Id.* at 444.

BC Services does not delve into whether its challenge is a facial or factual one, and it repeatedly mentions pleading failures by Hernandez. At the same time, however, BC Services cites to evidence and testimony outside of the four corners of the complaint as evidence that there has been no injury-in-fact. The Court is left to examine how the parties approached the standing challenge to discern whether it is a facial or factual challenge. Because both parties rely on and refer to evidence outside the four corners of the complaint, the Court finds that BC Services's challenge to standing is best construed as a factual challenge.

In evaluating a factual standing challenge, the very power of the Court to hear a case is at issue, and the Court enjoys substantial authority to weigh the evidence and satisfy itself as to the existence of its power to hear a case. *See Apex Digital, Inc.*, 572 F.3d at 444 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). Because of the importance of limiting federal jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the . . . [Court] from evaluating for itself the merits of jurisdictional claims." *Id.* Where the facts put the Court on notice that the jurisdictional allegation is probably false, "the [C]ourt is duty-bound to demand proof of its truth[,]" and Plaintiff "bears the burden of coming forward with competent proof that standing exists[.]" *Id.* at 444-445 (internal quotations and citations omitted).

BC Services argues that Hernandez cannot establish that he suffered an injury-in-fact, nor can he establish that any injury he suffered is traceable to its actions. In support, BC Services cites to *Casillas v. Madison Ave. Assocs. Inc.,* 926 F.3d 329 (7th Cir. 2019) for evaluating standing and the injury-in-fact requirement in FDCPA cases. In *Casillas*, the Seventh Circuit relied on *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016), which held that a bare procedural violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement. The Supreme Court reasoned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Casillas*, 926 F.3d at 333 (quoting *Spokeo*, 136 S.Ct. at 1549). The Seventh Circuit rejected the notion that a plaintiff could establish standing simply by pointing to a procedural violation and explicitly stated that a "bare procedural violation of the Fair Debt Collection Practices Act" is insufficient to confer standing. *Id.* at 339.

In *Casillas*, a consumer sued a debt collector after receiving a § 1692g notice that failed to specify that if she wanted to dispute an alleged debt from an account with Harvester Financial Credit Union, she had to do so in writing. *See Casillas*, 926 F.3d at 332. Casillas "did not allege that she tried—or even planned to try – to dispute the debt or verify that Harvester Financial Credit Union was actually her creditor." *Id.* The Seventh Circuit concluded that because the error did not put the debtor "in harm's way, it was nothing more than a bare procedural violation." *Id.* at 334.

The Court stated its ruling as follows: "no harm, no foul." *Casillas*, 926 F.3d at 331. The Seventh Circuit reasoned that courts must distinguish procedural violations from informational injuries, which do confer standing. To demonstrate an informational injury, a defendant must be shown to have failed to comply with an "obligation to provide substantive information" while a procedural violation involves only "its obligation to give notice of statutory rights." *Id.* at 335.

Here, Hernandez's complaint does not involve a bare procedural violation. First, Hernandez dropped his claims about collection activities that overshadowed and undermined the G Notice he received in September 2018. Second, Hernandez does not claim that BC Services failed to notify him appropriately of any statutory rights. Hernandez's allegations thus place this case outside the holding of *Casillas*.

Moreover, Hernandez has sufficiently alleged facts amounting to an informational injury cognizable under the FDCPA. While Hernandez does not squarely address *Casillas*, he points to different ways that his claims involve more than bare procedural violations. Hernandez asserts that a flurry of collection activity, where different amounts were shown as due on various days, confused him as to what amount, if any, he owed to BC Services and as to which accounts correlated with which debts. Hernandez further claims that he was given misleading or deceptive substantive information, and he alleges that BC Services used unfair and unconscionable means to pressure him into paying his debts. In this manner, Hernandez claims that BC Services impeded his opportunity to review and respond to the substantive information he was being provided in a meaningful way. Because the FDCPA explicitly protects consumers from unfair, unconscionable,

fraudulent, deceptive, and misleading communications, these perceived violations are more properly categorized as informational injuries rather than procedural violations. *See, e.g., Casillas*, 926 F.3d at 334 (finding consumer lacked standing but noting that the FDCPA "protect[ed] a consumer's interest in having an opportunity to review and respond to substantive information."). The Court is thus satisfied that there is sufficient support outside the complaint to assure that Hernandez's jurisdictional allegations are not false. The informational injuries alleged amount to an injury-in-fact, and as such, the Court finds that Hernandez's claims survive a factual challenge to standing.

## III.   Merits of Hernandez's Claims

The FDCPA is absolute: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The prohibition extends to false representations of "the character, amount or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). Debt collectors are further prohibited from the use of a "threat to take any action that cannot legally be taken or that is not intended to be taken," and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(5), (10). The FDCPA also states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Violations include the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

The debt collector's state of mind is irrelevant as the FDCPA is a strict liability

statute, but the debtor's state of mind is evaluated on an objective standard. *See Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)). The Seventh Circuit has consistently viewed collection attempts through the eyes of the "unsophisticated consumer" in weighing whether they violate the FDCPA. *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). The unsophisticated consumer is not a "dimwit" but "may be 'uninformed, naive, [and] trusting[]'" with "'rudimentary knowledge about the financial world.'" *Wahl*, 556 F.3d at 645 (quoting *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) and *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

Determining whether a statement is false, deceptive, or misleading under § 1692e, including whether a statement is confusing, requires a "fact-bound determination of how an unsophisticated consumer would perceive the statement." *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016)(citing *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 759 (7th Cir. 2006). "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 758 (7th Cir. 2009). Further, a statement is not false within the meaning of the FDCPA unless it would confuse the unsophisticated consumer. *See Turner*, 330 F.3d at 995.

How a particular communication or set of communications affects its intended target is a question of fact. *See Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999). A "mere claim of confusion is not enough: a plaintiff must show that the challenged . . . '[communication] unacceptably increases the level of confusion.'" *Durkin v. Equifax*

*Check Services, Inc.*, 406 F.3d 410, 415 (7th Cir. 2005)(quoting *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)). A "plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact 'unless a significant fraction of the population would be similarly misled.'" *Id.* (citing *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) and *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574-575 (7th Cir. 2004)). While not required, the Seventh Circuit has "advised litigants on several occasions that this feat might be accomplished through the use of survey evidence" or an appropriate expert witness. *Pettit*, 211 F.3d at 1062. Mere allegations of confusion without evidentiary support, however, are too speculative to create a genuine issue of material fact. *See Durkin*, 406 F.3d at 415 (citing references omitted).

BC Services argues that there is no evidence that it made a materially false, misleading, or deceptive statement to Hernandez. The Court first notes that the evidence in this case is slim overall. With its motion for summary judgment, BC Services provides a short declaration stating that the amounts due that were provided to Hernandez in writing and by telephone were accurate when conveyed. BC Services also provides short excerpts of Hernandez's deposition. The excerpts go over his health and types of potential damages more than focusing on the substance of his claims. The dunning letters at issue are attached to Hernandez's second amended complaint, and he provides discovery responses indicating that all parties agree that the letters are accurate with the exception of some redactions not appearing in the originals. In essence, the undersigned is left to

weigh summary judgment largely based on the allegations in and exhibits to Hernandez's second amended complaint.

In reviewing the record, there is insufficient evidence to support finding that BC Services engaged in conduct or a course of conduct that would cause an unsophisticated consumer an unacceptable degree of confusion. An unsophisticated consumer is deemed to possess "'rudimentary knowledge about the financial world' and is 'capable of making basic logical deductions and inferences.'" *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564-566 (7th Cir. 2004)(quoting *Pettit*, 211 F.3d at 1060). The evidence shows that Hernandez received letters from BC Services as early as February 2017, more than 18 months before the allegedly confusing communications in September 2018. It is a fair inference that Hernandez was aware he had other accounts related to Mid America Radiology that were in collections with BC Services, whether he agreed that the debts were valid or not.

Nevertheless, in examining the September 2018 letters that Hernandez received, the letters clearly broke down the total balance listed at the top by listing the account number and individual balance due at the bottom. For example, the September 20, 2018 letter seeking payment of $3,489.63 listed "VARIOUS ACCOUNTS-SEE BELOW" as the creditor at the top of the letter. (Doc. 40-2). This directed the reader to a box below listing two account numbers with Mid America Radiology listed as the creditor for each account. *Id.* The letter also provided the amount due broken down by account number ($2503.21 for account ending in 2959 and $986.42 for account ending in 2636). *Id.* Similarly, the September 26, 2018 letter seeking $5,779.51 clearly indicated that there were five accounts included in that balance, and the letter stated the balance and creditor of each account

clearly.[3] (Doc. 40-3). A person with rudimentary knowledge and the ability to make basic logical deductions would not be confused by these letters, and the Seventh Circuit is clear that it is "enough to tell the debtor the bottom line" of what is due. *See Hahn*, 557 F.3d at 757.

Further, there is no evidence, outside Hernandez's factual allegations in his second amended complaint, that creates a genuine issue of material fact as to whether an unsophisticated consumer would be misled or deceived, or even confused, by the communications. Hernandez did not conduct a survey, provide expert testimony, or otherwise provide any evidence describing the effect these letters would have on an unsophisticated consumer.  As such, there is insufficient evidence to create a genuine issue of material fact that BC Services violated § 1692e.

There is also no evidence the information BC Services provided was false or material in any way, and there is insufficient evidence to establish that BC Services engaged in unfair or unconscionable practices by attempting to collect unauthorized amounts. Even if Hernandez's interest-related claims were not time-barred, they would not support an FDCPA claim based on the theory that the letters sowed confusion by including interest or fees in violation of § 1692f.

To the extent that Hernandez's claim is that BC Services was not permitted to collect interest at all, there is no evidence of that, as the contract is not before the Court.

---

[3]     The creditor for each of the accounts listed is Mid America Radiology, with the following amounts: $40.28 for account ending in 5844, $1230.77 for account ending in 1593, $1018.83 for account ending in 8578, $2503.21 for account ending in 2959, and $986.42 for account ending in 2636.  The latter two listings are the exact same accounts and amounts due listed in the September 20, 2018 letter.

The record does not indicate whether interest was or was not allowed under the terms of Hernandez's original debt. Hernandez suggests there was no contract, but summary judgment is the time for him to come forward with competent evidence. There is nothing before the Court to confirm or to deny whether there was a contract or whether Mid America Radiology's billing allows for interest charges. If there was no contract, then there are ways to support that with evidence beyond conclusory statements and arguments that one does not exist.

To provide meaningful support for Hernandez's claims, the Court is left to look to Hernandez's allegations in his second amended complaint, and that is insufficient at the summary judgment stage. Simply put, there is insufficient evidence that would allow a reasonable juror to conclude that BC Services attempted to collect any amount that was not expressly authorized by the agreement between Hernandez and Mid America Radiology, so, even if the interest and fee-related claims were not time-barred, they would likewise fail as a matter of law.

While BC Services bears the burden as the moving party, there is next to no evidence to support Hernandez's claims in the record before the Court. There is nothing to suggest the alleged conduct of BC Services would cause confusion for an unsophisticated consumer. No evidence suggests the statements made by BC Services were materially false or deceptive other than Hernandez's testimony that he did not think he owed them any money. As such, the Court finds that no reasonable juror could conclude that BC Services violated the FDCPA in its attempts to collect debts from Hernandez, and BC Services is entitled to judgment as a matter of law.

## CONCLUSION

For the above-stated reasons, BC Services's motion for summary judgment is **GRANTED**. The Clerk of Court shall enter judgment in favor of Defendant BC Services, Inc. and against Plaintiff Miguel Hernandez and shall close this case.

**IT IS SO ORDERED.**

Dated: May 8, 2020.

Digitally signed
by Judge Sison
Date: 2020.05.08
10:38:24 -05'00'

_____
GILBERT C. SISON
United States Magistrate Judge